NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0352n.06
Filed: June 19, 2008

No(s) 06-6498; 07-5105

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| *Plaintiff-Appellee*, | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF KENTUCKY |
| *v.* | ) |
| | ) **O P I N I O N** |
| JAMES ELLIS RENNER; RUFUS HOLMES, | ) |
| | ) |
| *Defendants-Appellants*. | ) |

BEFORE:    SILER and COLE, Circuit Judges; and CLELAND, District Judge[*]

**R. GUY COLE, JR., Circuit Judge.**  In this consolidated appeal, Defendants-Appellants James Ellis Renner and Rufus Holmes challenge their sentences for conspiring to distribute and distributing a quantity of pills containing oxycodone, a Schedule II controlled substance, as unreasonable.  For the following reasons, we **AFFIRM** both sentences.

## I. BACKGROUND

On June 22, 2006, a grand jury in the Eastern District of Kentucky returned a nineteen-count superseding indictment against Danny D. Clark, James Ellis Renner, Samuel Duane Lawson, Rufus Holmes, and Marlene Holmes, charging them with conspiring to distribute and possession with the

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

intent to distribute a quantity of pills containing oxycodone and methadone, in violation of 21 U.S.C. § 841(a)(1). This indictment came as a result of a year-long investigation by federal, state and local authorities, which included multiple controlled buys, confidential informants and cooperating witnesses.

On August 14, 2006, Renner pleaded guilty to Count 1, conspiring to distribute and possession with the intent to distribute a quantity of pills containing oxycodone; Count 13, aiding and abetting the possession of, with the intent to distribute, a quantity of pills containing a detectable amount of oxycodone; Count 15, aiding and abetting the possession of, with the intent to distribute, a quantity of pills containing a detectable amount of oxycodone; and Count 19, criminal forfeiture pursuant to 21 U.S.C. § 853.

As a part of his plea agreement, Renner admitted that, on November 13, 2004, federal, state, and local authorities seized approximately twenty eighty-milligram OxyContin tablets—a prescription painkiller containing oxycodone—and $2,125.00 in currency during a traffic stop. On March 15, 2005, authorities obtained consent to search Renner's residence and found ten and three-quarters OxyContin tablets, one hundred and thirteen prescription Xanax pills, and thirty-two units of hydrocodone, another Schedule II controlled substance. Renner also admitted that, over the course of the conspiracy, he purchased a total of 2,100 OxyContin tablets, mostly for distribution.

According to the Guidelines, Renner pleaded guilty to an amount of oxycodone equal to 1,125.6 kilograms of marijuana, which put his base offense level at thirty two. UNITED STATES SENTENCING GUIDELINES ("U.S.S.G." or "Guidelines") § 2D1.1(c)(4). The Presentence Investigation Report ("PSR") recommended an increase pursuant to U.S.S.G. § 2D1.1(b)(1), for the

possession of a dangerous firearm during the offense, which resulted in an adjusted offense level of thirty four. Pursuant to U.S.S.G. § 3E1.1(a), the PSR recommended a three-point decrease for acceptance of responsibility. Based on a total offense level of thirty one and a criminal history category of six, the PSR calculated the Guidelines range as 188 to 235 months of imprisonment.

On September 27, 2006, Holmes pleaded guilty to Count 1, conspiring to distribute and possess with the intent to distribute a quantity of pills containing oxycodone; Count 12, aiding and abetting the distribution of a quantity of pills containing a detectable amount of oxycodone; Count 17, aiding and abetting the distribution of pills containing a detectable amount of oxycodone; and Count 19, criminal forfeiture pursuant to 21 U.S.C. § 853.

As a part of Holmes's plea agreement, Holmes admitted that, on September 22, 2004, federal and local authorities used a cooperating witness to purchase three OxyContin tablets from him for the price of $300.00. On April 28, 2006, another cooperating witness purchased two OxyContin tablets from Holmes for the price of $200.00. As a result of these controlled buys, which were audio recorded, authorities determined that Holmes and his wife, Marlene, purchased the pills from Clark for redistribution. Altogether, Holmes and his wife purchased approximately 31,200 OxyContin tablets and sold approximately two hundred OxyContin tablets per week for three years, all of which were supplied by Clark.

According to the Guidelines, Holmes pleaded guilty to an amount of oxycodone equal to 16,723 kilograms of marijuana, which put his base offense level at thirty six. U.S.S.G. § 2D1.1(c)(4). The PSR recommended a two-point decrease pursuant to the safety valve in U.S.S.G. § 2D1.1(b)(9), which resulted in an adjusted offense level of thirty four. Pursuant to U.S.S.G.

§ 3E1.1(a), the PSR recommended a three-point decrease for acceptance of responsibility. Based on a total offense level of thirty one and a criminal history category of one, the PSR calculated the Guidelines range as 108 to 135 months of imprisonment.

The United States District Court for the Eastern District of Kentucky sentenced Renner to 200 months on each count to be served concurrently, and Holmes to a term of 87 months on each count to be served concurrently. Both defendants timely appealed.

## II. ANALYSIS

### A. James Ellis Renner

Renner argues that (1) the district court's enhancement of his sentence for possession of a firearm violated *United States v. Booker*, 543 U.S. 220 (2005), because the court relied on a fact not found by a jury beyond a reasonable doubt; and (2) the district court did not properly consider his poor health during sentencing. We find neither argument compelling.

#### 1. Judicial Fact-Finding

Renner's argument that the district court violated *Booker* by judicial fact-finding is meritless. In *Booker*, the Supreme Court clarified the constitutionality of judicial fact-finding under the Guidelines by declaring that the Guidelines range was to be considered advisory rather than mandatory. *Booker*, 543 U.S. 259-60. But, as this Court has repeatedly held, "judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury." *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006); *see also United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006). Contrary to Renner's claim, *Booker* did not hold that judicial fact-finding

is unconstitutional unless the facts applied to the sentencing determination are found beyond a reasonable doubt.

### 2. Reasonableness Review

Renner also challenges his sentence of 200 months, within the Guidelines range of 188 to 235 months, as unreasonable. The district court's task at sentencing is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the factors set forth in Section 3553(a). 18 U.S.C. § 3553(a). "'The court need not recite the[] factors [listed in 18 U.S.C. § 3553(a)] but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review.'" *United States v. Penson*, ---, F.3d ----, 2008 WL 2167383, at *3 (6th Cir. 2008) (quoting *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005)).

Under *Rita v. United States*, --- U.S. ---, 127 S. Ct. 2456 (2007), and *Gall v. United States*, --- U.S. ---, 128 S. Ct. 586 (2007), we review a district court's sentencing determination for reasonableness under a deferential abuse-of-discretion standard. "This review entails a two-step process. The appellate court 'must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Penson*, 2008 WL 2167383, at *4 (quoting *Gall*, 128 S. Ct. at 597). "'Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Id.* (quoting *Gall*,

128 S. Ct. at 597). We may apply a nonbinding, rebuttable presumption of reasonableness to a within-Guidelines sentence. *Rita*, 127 S. Ct. at 2462-63.

(a) *Procedural Reasonableness*

Renner's central claim is that the district court should have granted a downward departure because of his poor health. According to the PSR, Renner "has suffered five heart attacks and three strokes, and has undergone open-heart surgery twice." Renner has also had two angioplasty procedures and two cardiac catheterizations, and takes eleven prescription medications in the morning and six at night for his various heart conditions. Pursuant to U.S.S.G. § 5H1.4, "an extraordinary physical impairment may be a reason to downward depart; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." The problem, however, is that Renner did not seek a downward departure in the district court, and cannot do so now. *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002) (holding that defendant's failure to seek a downward departure waives the claim on appeal).

To the extent that Renner's argument could be construed as a challenge to the procedural reasonableness of the sentence, we review for plain error because at the conclusion of the sentencing hearing, the district court asked the parties "if there's any objection to the sentence imposed," and Renner's counsel responded, "No objection, Your Honor." *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). To demonstrate plain error, Renner must show "(1) that an error occurred in the district court; (2) that the error was plain, *i.e.,* obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the

fairness, integrity or public reputation of the judicial proceedings." *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005).

Here, no error occurred, plain or otherwise, because the district court properly calculated the applicable Guidelines range, gave both parties the opportunity to argue for whatever sentence they deemed appropriate, and considered all of the § 3553(a) factors. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) ("[I]n reviewing sentences for procedural reasonableness we must ensure that the district court: (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guildeines sentence and any decision to deviate from the advisory Guidelines range.").

After detailing Renner's extensive criminal history, and noting that "the penalties that [Renner has] received have not diminished his activities," the district court concluded that "it is necessary to impose a substantial sentence in order to adequately deter future criminal conduct of this defendant and also to protect the public." The court also considered Renner's request for leniency based on the fact that he is serving an eleven-year concurrent state sentence. The court denied the request because "[t]o impose a sentence otherwise would unduly diminish the seriousness of his offenses and his activities," but declined to sentence Renner at the upper end of the Guidelines range because to do so would violate "subsection (6), the need to avoid unwarranted sentencing disparities among defendant's with similar records." Considering "all the factors in the case, including the undischarged state term that he will serve, as well as all of the characteristics," the court ultimately concluded that

a two-hundred month sentence "would be appropriate and serve all of the statutory purposes . . . just reviewed."

True, the court did not mention his medical condition directly, but this fact does not change our analysis. Although "the record must reflect both that the district judge considered the defendant's argument [for a lower sentence] and that the judge explained the basis for rejecting it," *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007) (quoting *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)), Renner's counsel mentioned Renner's poor health only in passing during the sentencing hearing. After describing the severity of Renner's drug addiction, pointing out his acceptance of responsibility, and requesting leniency based on a concurrent eleven-year state sentence that Renner is currently serving, Renner's counsel concluded: "[G]iven the nature of this offense and it being the same exact conduct, my client is in poor health, and given the fact that these cases are essentially the same case as this conspiracy in this court, we would ask that the Court consider not only sentencing Mr. Renner to the lower end of the guidelines but to run his federal sentence concurrent with the state charges." A district court's failure to respond to a statement made in such a perfunctory manner does not render a sentence procedurally unreasonable. *See United States v. Liou*, 491 F.3d 334, 339 n.4 (6th Cir. 2007) ("[W]hile a district court's failure to address each argument [of the defendant] head-on will not lead to automatic vacatur, we will vacate a sentence if the 'context and the record' do not 'make clear' the court's reasoning.") (quoting *Rita*, 127 S. Ct. at 2469).

Furthermore, the record demonstrates that the district court correctly calculated the Guidelines sentencing range, considered the availability of Guideline departures, independently applied all the

§ 3553(a) factors, including Renner's arguments for a lower sentence, and explained its reasons for imposing a sentence of 200 months. The district court also noted in detail the nature and circumstances of Renner's criminal history, including multiple prior felony and misdemeanor drug convictions. In short, the district court adequately explained the chosen sentence to allow for meaningful appellate review. *Bolds*, 511 F.3d at 580-81.

(b) *Substantive Reasonableness*

We review Renner's challenge to the substantive reasonableness of his sentence for abuse of discretion. *Gall*, 128 S.Ct. at 597. We have held that "[a] sentence may be substantively unreasonable where the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Jones*, 489 F.3d at 252 (internal quotations and alterations omitted). However, sentences within the Guidelines range are afforded a rebuttable presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

Here, Renner has not rebutted the presumption of reasonableness we accord to within-Guidelines sentences. First, the record does not support the proposition that Renner's medical condition cannot be adequately treated by the Bureau of Prisons. *See, e.g.*, *United States v. Jones*, 197 F. App'x 455, 458-59 (6th Cir. 2006) (declining to find a sentence unreasonable based on the defendant's age and physical condition). Second, a policy statement contained in the Guidelines states that the defendant's physical condition is "not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.4; *see also United States v. Jackson*, 408 F.3d 301, 305 n.3 (6th Cir. 2005) (holding that if a district court relies on a discouraged factor in sentencing, such

as physical condition, "the district court will need to address these provisions and decide what weight, if any, to afford them in light of *Booker*"). Because Renner's medical condition is not ordinarily a relevant ground for imposing a lower sentence under the Guidelines unless it "is present to an exceptional degree," U.S.S.G.§ 5K2.0(a)(4), the failure to reduce his sentence on the basis of his health—either sua sponte or through a motion for downward departure—was not an abuse of discretion. Given Renner's extensive criminal history and the nature of the offense, and given the court's careful consideration of his remaining arguments for leniency, we cannot conclude that the district court selected Renner's sentence arbitrarily or gave an unreasonable amount of weight to any pertinent factor. *See United States v. Collier*, 246 F. App'x 321, 334 (6th Cir. 2007) (holding that defendant's age and medical condition "do not sufficiently impugn the reasonableness of a within-Guidelines range sentence").

**B. Rufus Holmes**

    1. <u>Reasonableness Review</u>

Holmes challenges his sentence of 87 months, below the Guidelines range of 108 to 135 months, as unreasonable. According to Holmes, the district court did not properly explain and address the factors used in determining his sentence, nor do the § 3553(a) factors support the length of that sentence.

    (a) *Procedural Reasonableness*

At the end of Holmes's hearing, the district court asked the parties if they had any objections to the sentence, and Holmes's counsel responded, "No, Your Honor." Accordingly, we review Holmes's claim that his sentence is procedurally unreasonable for plain error. *Vonner*, 516 F.3d at

386.  Here, no error occurred, plain or otherwise, because the district court properly calculated the applicable Guidelines range, gave both parties the opportunity to argue for whatever sentence they deemed appropriate, and considered all of the § 3553(a) factors.  *Bolds*, 511 F.3d at 581.

The district court began by noting the "substantial quantities" of drugs and the extended period of time the conspiracy lasted.  The court went through each statutory factor, considered Holmes's history and characteristics—including his medical condition and lack of criminal history—and explained that it was "sympathetic to his position."  The court then concluded that eighty-seven months, below the advisory Guidelines range of 108 to 135 months, "would not unduly diminish the offense that has been discussed here," and "would be sufficient but not greater than necessary to serve all of the statutory purposes."  The record demonstrates that the district court correctly calculated the Guidelines sentencing range, considered the availability of Guidelines departures, independently applied all the § 3553(a) factors, including Holmes's arguments for a lower sentence, and explained its reasons for imposing a sentence of 87 months.  In sum, because the district court adequately explained the chosen sentence to allow for meaningful appellate review, *Bolds*, 511 F.3d at 580-81, no plain error occurred.

(b)  *Substantive Reasonableness*

Holmes's sentence is also substantively reasonable.  On appeal, Holmes merely reiterates his lack of criminal history and his drug addiction as reasons for a shorter sentence, but the district court explicitly considered both of those factors below.  Given the nature and circumstances of the offense—large quantities of drugs and the extended period of time of the conspiracy—and given the court's careful consideration of Holmes's  plea for leniency, we conclude that the district court did

not select the sentence arbitrarily or give an unreasonable amount of weight to any pertinent factor.

Furthermore, sentences within the Guidelines range are afforded a rebuttable presumption of

reasonableness, *Williams*, 436 F.3d at 708, and it follows that a below-Guidelines sentence is also

given the same presumption of reasonableness, *see United States v. Hamid*, 227 F. App'x 475, 479

(6th Cir. 2007).  Because Holmes has not advanced any argument to rebut that presumption, the

district court did not abuse its discretion in sentencing him to 87 months.

### III.  CONCLUSION

For those reasons, we **AFFIRM** both sentences.